IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER FEDDER, | : | Civil No. 4:21-CV-1677 |
| Plaintiff, | : | |
| v. | : | |
| SNYDER COUNTY, | : | (Magistrate Judge Carlson) |
| Defendant. | : | |

# MEMORANDUM OPINION

## I.   Factual Background

This is a *pro se* lawsuit brought by Christopher Fedder against Snyder County, Pennsylvania for alleged civil rights violations under 42 U.S.C. § 1983. Mr. Fedder's current federal civil complaint appears to stem from his 2015 state court convictions for driving under the influence of alcohol and related traffic offenses. Commonwealth v. Fedder, CP-55-CR-0000285-2014. (Doc. 14-4). Fairly construed, Fedder's federal civil complaint alleges that state officials engaged in a malicious prosecution of Fedder in 2015 based upon perjured testimony.

However, it is noteworthy that Fedder has not succeeded in vacating or otherwise setting aside this state court conviction. Thus, Fedder remains convicted of these state criminal offenses. We further note that this federal lawsuit is not Fedder's first foray in court as part of an effort to sue those who successfully prosecuted him in 2015. Quite the contrary, Fedder previously filed a state court

lawsuit which made virtually identical allegations of malicious prosecution by state officials. Fedder v. Snyder County, CV-343-2016 (Ct. Cmmn Pleas, Snyder County). That prior civil lawsuit was dismissed by the state court on September 29, 2021. (Doc. 14-5).

It is against the backdrop of this prior criminal conviction in state court, a conviction which remains unchallenged, and an unsuccessful prior civil lawsuit in state court which asserted legal claims identical to those advanced here, that Fedder now come to federal court seeking to repeat and reprise his malicious prosecution claims. (Doc. 1). The defendant has moved to dismiss Fedder's *pro se* complaint, arguing that it is untimely, fails to state a claim of agency liability, and is barred by both Fedder's prior criminal conviction and by the dismissal of his prior state civil lawsuit. (Doc. 14). This motion is fully briefed by the parties, (Docs. 15, 19, and 20), and is, therefore, ripe for resolution.

For the reasons set forth below, the motion to dismiss will be granted.

**II.   Discussion**

    **A.   Motion to Dismiss – Standard of Review**

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for

the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a

3

plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations

4

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

5

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in

determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Judge against these legal benchmarks, Mr. Fedder's complaint fails for at least three reasons as discussed below.

### B. Fedder May Not Bring a Malicious Prosecution Claim in a Case Where He Remains Convicted.

At the outset, any false arrest and malicious prosecution claims set forth in Fedder's complaint fail because they rest upon a fatally flawed legal premise. At bottom, the plaintiff seeks to bring a civil rights action premised on claims of malicious prosecution despite the fact that he was convicted at trial, sentenced and has not set aside or overturned these convictions.

This he cannot do. Quite the contrary, it is well settled that an essential element of a civil rights malicious prosecution claim is that the underlying criminal case must have been terminated in favor of the civil rights claimant. Therefore, where, as here, the civil rights plaintiff brings a malicious prosecution or false arrest claim based upon a state case that resulted in a conviction, the plaintiff's claim fails as a matter of law. The Third Circuit has aptly observed in this regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483, 114 S.Ct. 2364, 129 L.Ed.2d 383(1994) (quoting Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (internal quotation marks omitted)). Given this close

> relation between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." Heck, 512 U.S. at 483 (quoting Carey v. Piphus, 435 U.S. 247, 257-58, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). The Supreme Court applied this rule in Heck to an inmate's § 1983 suit, which alleged that county prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct. In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy . . . because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Heck, 512 U.S. at 484. Looking to the elements of malicious prosecution, the Court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in Heck had not successfully challenged his criminal conviction. Id.

Hector v. Watt, 235 F.3d 154, 155-156 (3d Cir. 2000).

Thus, "our precedents are clear that § 1983 plaintiffs alleging arrest and prosecution absent probable cause may bring malicious prosecution claims under the Fourth Amendment, but are entitled to relief only if they are innocent of the crime for which they were prosecuted." Washington v. Hanshaw, 552 F. App'x 169, 173 (3d Cir. 2014) (citing Hector, 235 F.3d at 156). Therefore, "a plaintiff claiming malicious prosecution must prove *actual* innocence as an element of his *prima facie* case." Steele v. City of Erie, 113 F. App'x 456, 459 (3d Cir. 2004). See Guider v. Evans, No. 1:14-CV-00331, 2014 WL 2472123, at *6-7 (M.D. Pa. June 2, 2014).

In the instant case, it is clear that Fedder has not achieved a favorable termination of this state prosecution since he currently remains convicted of these state DUI offenses. Since a favorable termination of the plaintiff's state criminal case is a prerequisite to any civil rights claims based upon allegations of false arrest or malicious prosecution, the immutable fact of Fedder's state court conviction defeats these claims and compels dismissal of this complaint. In short, this complaint is based upon the fundamentally flawed legal premise that the plaintiff can sue the state for malicious prosecution even though he has not prevailed in the underlying state case. Since this premise is simply incorrect, this complaint fails as a matter of law. See Fleming v. Yates, No. 1:21-CV-349, 2021 WL 1899870, at *6 (M.D. Pa. Mar. 16, 2021), report and recommendation adopted, No. CV 1:21-349, 2021 WL 1499315 (M.D. Pa. Apr. 16, 2021); Galloway v. Kane, No. 1:15-CV-1007, 2015 WL 3953112, at *5–6 (M.D. Pa. June 29, 2015).[1]

---

[1] While the defendant also argues that Fedder's case, which arises out of his 2015 state court convictions, is time-barred under the two-year statute of limitations that applies to civil rights claims, we will decline the invitation to dismiss this lawsuit on statute of limitations grounds since in this particular factual context "the statute of limitations begins to accrue when the termination of criminal proceedings becomes favorable; that is, when 'the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.' " Curry v. Yachera, 835 F.3d 373, 379 (3d Cir. 2016). Given our finding that Fedder has not yet achieved a favorable termination of his state criminal case, we conclude that the statute of limitations on these false arrest and malicious prosecution claims has not yet accrued.

### C. Fedder May Not Use this Federal Lawsuit to Invite Us to Set Aside State Court Rulings

We further note that Fedder's state court criminal conviction, and his prior unsuccessful state civil lawsuit, impose an additional series of insurmountable legal obstacles for the plaintiff in pursuing this civil rights-malicious prosecution claim. Given these prior adverse state court rulings, at bottom the plaintiff appears to necessarily urge us to, in effect, sit as a state appellate court and review, re-examine, and reject these state court rulings in his prior state cases.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court . . . .". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir. 2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing

10

courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP, 449 F.3d 542, 547 (3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering lawsuits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005), particularly where those lawsuits necessarily require us to re-examine the outcome of this state criminal case. As the Court of Appeals has observed in dismissing a similar lawsuit, which sought to make a federal case out of state court rulings made in a prior state criminal case:

> The Rooker-Feldman doctrine divests federal courts of jurisdiction "if the relief requested effectively would reverse a state court decision or void its ruling." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006) (internal citations omitted). The doctrine occupies "narrow ground." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). It applies only where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Id. at 291, 125 S.Ct. 1517. . . . Ordering the relief he seeks, however, would require the District Court to effectively determine that the state courts' jurisdictional determinations were improper. Therefore, [Plaintiff] Sullivan's claims are barred by the Rooker-Feldman doctrine. To the extent Sullivan was not "appealing" to the District Court, but instead was attempting to relitigate issues previously determined by the Pennsylvania courts, review is barred by res judicata. See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir. 2009) (describing conditions in Pennsylvania under which collateral estoppel will bar a subsequent claim).

Sullivan v. Linebaugh, 362 F. App'x 248, 249-50 (3d Cir. 2010).

This principle applies here. Thus, in this case, as in Sullivan, the Rooker-Feldman and *res judicata* doctrines combine to compel dismissal of this case, to the extent that the plaintiff improperly invites us to act as a Pennsylvania appellate court for matters and claims relating to the plaintiff's state criminal prosecution or prior state civil lawsuit.

### D. Fedder's Complaint Fails to State a Claim of Institutional Liability Against Snyder County.

Finally, to the extent that Fedder seeks to hold an institutional defendant, Snyder County, liable for alleged civil rights violations, he must meet an exacting burden of pleading and proof. It is well settled that local governmental entities may

not be held liable under § 1983 for the acts of others under a theory of *respondeat superior* or vicarious liability. Iqbal, 556 U.S. 662; see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). Instead, such an agency may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Thus, to sustain a claim against this institutional defendant, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." Id. at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted).

      The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404). Therefore, analysis of a claim under Monell requires separate analysis of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and

13

(2) if so whether the [the institutional defendant] is responsible for that violation." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

In the instant case, Fedder's civil rights claims against Snyder County fail to meet either of these two legal prerequisites for a valid Monell institutional liability claim. First, Fedder has not shown an actionable constitutional violation, nor can he given the immutable fact that he remains convicted of the criminal offenses that he seeks to challenge in this lawsuit. Moreover, Fedder has not alleged any well-pleaded facts that would state a plausible claim that there was a policy, custom, or practice in Snyder County of unjustly convicting individuals of state DUI offenses. Therefore, Fedder simply may not hold Snyder County civilly liable based upon his convictions in 2015 for driving while impaired in that county. Accordingly, this complaint will be dismissed.

Having determined that Fedder's complaint fails on numerous scores, we acknowledge that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, however, we find that no form of more artful pleading can overcome the legal and constitutional obstacles to any claims against Snyder County. We likewise conclude that given

Fedder's conviction of these state charges and his unsuccessfully state lawsuit, he cannot overcome the Rooker-Feldman and *res judicata* doctrines, and the Supreme Court's favorable termination rule announced in Heck bars any malicious prosecution claims. Therefore, all of these claims will be dismissed with prejudice.

An appropriate order follows.

Submitted this 18th day of January 2022.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
